BRYANT & MAY, Limited, v. SCOTT, Internal Revenue Collector
(two cases).

(District Court, N. D. California, Second Division.  September 14, 1914.)

Nos. 15452, 15737.

INTERNAL REVENUE ☞9—FEDERAL CORPORATION TAX—"DOING BUSINESS."
   Where a foreign corporation owned timber lands in a state and operated a match factory, but sold such timber lands to another company, as well as its plant, the payments to be made in installments, the foreign company to retain title until paid in full, although retaining an attorney in the state to look after its interests and an agent for service of process, as required by state statute, such corporation was not thereafter "doing business" in the state, so as to render the property sold taxable to it under Corporation Tax Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, § 6300), providing that every corporation organized under the laws of any foreign country, and engaged in business in any state, shall be subject to pay annually a special excise tax.
   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.
   For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

At Law.  Actions by Bryant & May, Limited, a corporation, against Joseph J. Scott, as Collector of Internal Revenue.  Judgments for plaintiff.

J. R. Robinson, Jr., of Chico, Cal., and A. F. Jones, of Oroville, Cal., for plaintiff.

John W. Preston, U. S. Atty., and Earl H. Pier and M. A. Thomas, Asst. U. S. Attys., all of San Francisco, Cal., for defendant.

VAN FLEET, District Judge.  The plaintiff in these actions seeks to recover taxes assessed against it under the Corporation Tax Act of August 5, 1909 (36 Stats. p. 112, c. 6), for the four years 1909–1912, inclusive, and paid by it under protest.  The statute (section 38) provides:

"That every corporation, * * * organized for profit and having a capital stock represented by shares, * * * or now or hereafter organized under the laws of any foreign country and engaged in business in any state, * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation," etc.

The sole controverted question upon which judgment turns is whether plaintiff was, within the purview of the statute, "engaged in business" or "doing business" in the state at the date of the several assessments, and so subject to the tax.

The plaintiff is an English corporation organized for profit, having a capital stock represented by shares, and engaged in the match trade, with its home office or place of business in London.  Prior to 1898 it acquired and owned, jointly with the Diamond Match Company, an American corporation, a large acreage of timber land in this state, and was therein engaged with that company in the manufacture of

matches near Chico, in Butte county, where it maintained its local office. In December, 1898, it sold its interest in the enterprise; that is, it made an executory contract of sale to the Diamond Match Company of its entire title and interest in all its property in the state, and at that time retired from all further participation or interest in the business and removed its office from the state. The contract of sale provided for partial payments on the purchase price during a series of years, and that until the final payment the legal title to the lands should remain in plaintiff solely as security for the principal and interest, but. stipulated for an immediate surrender of the possession of the property to the purchaser, with the provision that the purchaser was to "enjoy and be entitled to all of the rights of exclusive and sole ownership thereof. so long as it shall fulfill and perform all of the covenants and agreements hereinbefore mentioned on its part, * * * and shall not be required to account to the said party of the first part for such use or for any portion of the profits * * * for any purpose whatsoever during said period," and stipulated further that the purchaser should pay all taxes, assessments, governmental charges, etc., that might be levied or assessed against the property between the date of sale and the final payment.

Upon the execution of this agreement the possession of the property was at once surrendered to the purchaser, and since that date plaintiff has maintained no business office in the state, and has not transacted, or participated in, that or any other business therein further than to hold the naked legal title to the property sold until the final payment on the purchase price, in 1912, when, the contract being fully consummated, the property was formally conveyed to the purchaser. All deferred payments and remittances on principal and interest under the contract were had by draft from the purchaser, the Diamond Match Company, from its main office in New York direct to plaintiff at its home office in London. During the life of the contract, and until the final consummation of the transfer, the plaintiff continued, as it had for some years previously, to maintain an agent in the state, designated in accordance with the requirements of the California Civil Code (section 405) relative to foreign corporations to receive service of legal process, whose functions were purely those specified in the statute, and who received no compensation and performed no duties in connection with any other business of plaintiff. During the same period, and down to the present time, one of the attorneys for the plaintiff in the present action, a resident of this state, has been retained by it to look after and protect its rights under the contract during its existence and supervise the final transfer of the title, and since the completion of the sale to attend to the present litigation and one similar action brought by it against the state to recover a corporation franchise. tax levied under a state statute.

Do these facts show the plaintiff corporation to have been within the category subject to the tax at the date of these assessments? It is contended by the government that, as plaintiff maintained a legal agent and its corporate existence in the state "for the purpose of carrying out the terms of its contract of sale, and thereby collected

deferred payments and derived a considerable revenue from the * * * interest on its notes," it is to be regarded as transacting business in the sense of the statute, and is subject to its provisions.

But in considering the facts it must be borne in mind that the tax is neither upon the franchise, the capital stock, nor the income of the corporation, but is a tax upon the "doing of business, with the advantages which inhere in the peculiarities of corporate or joint stock organizations of the character described." Flint v. Stone Tracy Co., 220 U. S. 107, 145, 31 Sup. Ct. 342, 347 (55 L. Ed. 389, Ann. Cas. 1912B, 1312). And this has reference to no merely sporadic or incidental acts or transactions, but to a carrying on of the business in which the corporation is engaged. Thus in McCoach v. Minehill Ry. Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842, where the railroad company had leased its road to another company for operation and ceased to operate it itself, but maintained its corporate existence in the state and an office force to collect and distribute to its stockholders, not only the rental from the lessee of the road, but dividends from other investments of the corporation, it was held that the lessor was not doing business within the meaning of this act. It is there said:

"In our opinion the mere receipt of income from the property leased (the property being used in business by the lessee and not by the lessor), and the receipt of interest and dividends from invested funds, bank balances, and the like, and the distribution thereof among the stockholders of the Minehill Company amount to no more than receiving the ordinary fruits that arise from the ownership of property."

And again in the case there referred to of Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428, involving the same question, where the defendant, originally organized for the letting of stores and offices owned by it, had made a lease of all its property to trustees for a term of 130 years, and had caused its articles of incorporation to be amended so as to confine the purpose of the corporation to the ownership of the leased lands, and to receive and distribute among the stockholders the rentals to accrue therefrom and the proceeds of any disposition of the property, it is said:

"The corporation involved in the present case, as originally organized and owning and renting an office building, was doing business within the meaning of the statute as we have construed it. Upon the record now presented we are of opinion that the Minneapolis Syndicate, after the demise of the property and reorganization of the corporation, was not engaged in doing business within the meaning of the act. It had wholly parted with control and management of the property; its sole authority was to hold the title subject to the lease for 130 years, to receive and distribute the rentals which might accrue under the terms of the lease, or the proceeds of any sale of the land if it should be sold. The corporation had practically gone out of business in connection with the property and had disqualified itself by the terms of reorganization from any activity in respect to it."

Within the principles of these cases I am of the opinion that the facts do not bring the plaintiff within the act as one subject to the tax. The mere retention of the legal title to the property sold as security for the purchase price, and the continuance of plaintiff's corporate capacity in the state for the protection of its rights under the contract and to receive the deferred payments of principal and interest, do

not constitute "doing business" in the sense of, the statute. If the functions being performed by the corporations in the above cases did not constitute carrying on business, it is quite obvious that what was left to be done by plaintiff at the time of the assessments here in question cannot be so characterized, since manifestly there can be no well-founded distinction, so far as constituting the "doing of business," between the functions of receiving and distributing to stockholders *the income* from invested funds, as in those cases, and the receipt and distribution to the stockholders of the principal and interest derived from property sold—that is, where, as here, the selling of the property is not in pursuance of the business for which the corporation was organized but for the purpose of retiring therefrom. Indeed, the performance of the former functions, being more permanent, would seem to be more in the nature of carrying on business than the latter.

The case of Park Realty Company, one of the cases involved in Flint v. Stone Tracy Co., supra, relied upon by the government, is distinguishable from the present. There the realty company was still engaged in the business for which it was organized, the management and leasing of its hotel property, and so was held to be within the purview of the act.

These considerations lead to the conclusion that the taxes in suit were illegally levied and collected, and that plaintiff is therefore entitled to have them refunded.

Judgment will accordingly be entered for plaintiff as prayed.